# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39425-2011

ALMA A. ELIAS-CRUZ,            )
                                           )    **Boise, June 2012 Term**

      **Plaintiff-Respondent,**      )

                                           )    **2012 Opinion No. 99**

v.                               )

                                         )    **Filed: June 29, 2012**

IDAHO DEPARTMENT OF        )
TRANSPORTATION,           )    **Stephen W. Kenyon, Clerk**

                                         )

      **Defendant-Appellant.**      )

                                         )

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Latah County. The Hon. John R. Stegner, District Judge.

The judgment of the district court is <u>reversed</u>.

Edwin L. Litteneker, Lewiston, argued for appellant.

Catherine Enright, Moscow, argued for respondent.

---

EISMANN, Justice.

      This is an appeal from a decision of a district court holding that in a hearing regarding an administrative license suspension pursuant to Idaho Code section 18-8002A, the hearing officer must consider the margin of error of the breath testing machine when determining whether the test results support suspension. We reverse the judgment of the district court.

## I.

## Factual Background.

      On October 21, 2010, at approximately 9:09 p.m., an Idaho State Trooper stopped a vehicle on U.S. Highway 95 for speeding. The driver of the vehicle was twenty-year-old Alma Elias-Cruz. When the trooper contacted the driver, he smelled the odor of an alcoholic beverage coming from inside the vehicle, and Ms. Elias-Cruz admitted to consuming alcohol prior to driving. The trooper had her perform field sobriety tests, and he concluded that she showed

signs of having consumed alcohol. He could also smell the odor of an alcoholic beverage coming from her while he was conducting the field sobriety tests. He arrested her for driving under the influence of alcohol and having an open container of alcohol in a motor vehicle. He then administered a breath test to her using a Lifeloc FC20, and it showed an alcohol concentration of 0.021 and 0.020.

Because Ms. Elias-Cruz was under twenty-one years of age, her driver's license could be administratively suspended for ninety days if she was driving with an alcohol concentration of at least 0.02. I.C. §§ 18-8002A(4)(a) & 18-8004(1)(d). The trooper seized Ms. Elias-Cruz's driver's license and gave her a notice of suspension pursuant to Idaho Code section 18-8002A(5). She timely requested an administrative hearing, which was held on December 9, 2010. At the hearing, she had the burden of proving by a preponderance of the evidence the existence of one of the six statutory grounds for vacating the suspension of her license.[1] Ms. Elias-Cruz did not attempt to prove any of the statutory grounds. She presented the testimony of an expert witness who testified regarding the margin of error of the testing equipment. Based upon that testimony, Ms. Elias-Cruz argued that any suspension must be based upon her actual blood alcohol concentration rather than the alcohol concentration as shown by the test; that due to the testing equipment's margin of error, her actual blood alcohol content could have been below 0.02; and that the testing equipment had not been calibrated once a year as recommended by the manufacturer. The hearing officer rejected those arguments and sustained her suspension.

---

[1] Idaho Code section 18-8002A(7) provides:

> The burden of proof shall be on the person requesting the hearing. The hearing officer shall not vacate the suspension unless he finds, by a preponderance of the evidence, that:
> (a) The peace officer did not have legal cause to stop the person; or
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
> (e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

Although listing the grounds as (a) through (e) would indicate five grounds, subsection (d) includes two separate grounds.

Ms. Elias-Cruz filed a petition for review with the district court pursuant to Idaho Code section 18-8002A(8). She argued to the district court: (a) that the hearing officer erred in failing to consider the testing equipment's margin of error; (b) that the hearing officer should have vacated her license suspension because the testing equipment had not been calibrated within one year as recommended by the manufacturer; and (c) that the verification test for the equipment conducted on October 22, 2010, produced only one sample rather than the two required by the Idaho State Police Standard Operating Procedures. The district court ruled sua sponte that her due process rights were violated by the hearing officer's rejection of the equipment's margin of error and that she had a statutory right to present such evidence. The court vacated the hearing officer's decision and ordered the matter remanded. The State then timely appealed.

## II.

### Standard of Review.

"A party aggrieved by the decision of the hearing officer may seek judicial review of the decision in the manner provided for judicial review of final agency action provided in chapter 52, title 67, Idaho Code." I.C. § 18-8002A(8). When reviewing agency action on a petition for judicial review, the district court must affirm the agency unless it finds that the agency's findings, inferences, conclusions, or decisions are: "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." I.C. § 67–5279(3).

The district court cannot substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. I.C. § 67-5279(1). On an appeal from the district court, we review the decision of the district court to determine whether it correctly decided the issues presented to it. *Wright v. Bd. of Psychological Examiners*, 148 Idaho 542, 544-45, 224 P.3d 1131, 1133-34 (2010).

## III.

### Did the District Court Err in Ruling that Due Process Requires Consideration of the Testing Equipment's Margin of Error?

The district court held that the hearing officer violated Elias-Cruz's right to due process of law by failing to take into account the margin of error of the Lifeloc FC20. In *McDaniel v. State, Department of Transportation*, 149 Idaho 643, 239 P.3d 36 (Ct. App. 2010), our Court of Appeals held, "Nowhere does I.C. § 18–8002A contain language that requires the hearing officer to take into account any inherent error within the breath test machine before a license can be suspended, it simply requires that the test results indicate a BAC in excess of the legal limit . . . ." *Id*. at 646, 239 P.3d at 39. The district court rejected the *McDaniel* opinion because "[t]he court focused only on the statutory interpretation without considering whether McDaniel's constitutional rights to due process were violated by that analysis." It then held: "Elias-Cruz's constitutional rights to due process were therefore violated by the Hearing Officer's wholesale rejection of the Lifeloc FC20's margin of error." In so holding, the district court erred.

In 1970, the legislature enacted a statute creating a presumption of intoxication if the driver's blood alcohol content exceeded the specified level. The statute stated, "If there was at that time more than 0.10 per cent by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor." Ch. 9, § 2, 1970 Idaho Sess. Laws 15, 16 (codified as I.C. § 49-1102). In *State v. Stutliff*, 97 Idaho 523, 547 P.2d 1128 (1976), we addressed whether the State was required to provide expert testimony extrapolating the blood test results back to the time of the driving. *Id*. at 524, 547 P.2d at 1129. We noted that the blood alcohol content at the time of driving could be either higher or lower than it was at the time of testing, depending upon the circumstances. *Id*. We ruled that "[t]he lapse of time prior to the extraction of samples goes to the weight to be afforded the test results and not to their admissibility," *id*., and we held that "this statute does not require extrapolation back but establishes that the percentage of blood alcohol as shown by chemical analysis relates back to the time of the alleged offense for purposes of applying the statutory presumption," *id*. at 525, 547 P.2d at 1130.

In 1984, the legislature repealed Idaho Code section 49-1102 and enacted a new statute designated Idaho Code section 18-8004 that changed the significance of test results for blood alcohol concentration. Under the new statute, the test results no longer created merely a presumption of intoxication. They could be used to establish a per se violation of the statute. The statute provided that it was unlawful to drive when one "is under the influence of alcohol, drugs or any other intoxicating substances, or [] has 0.10 percent or more, by weight, of alcohol

4

in his blood, as shown by analysis of his blood, urine, breath, or other bodily substance." Ch. 22, § 2, 1984 Idaho Sess. Laws 25, 29. The statute established two ways of proving a violation. "[T]he first way to prove a violation is to show under the totality of the evidence that the defendant was driving under the influence. The second way to prove a violation is to establish the defendant drove with an alcohol concentration of 0.08 percent or more."[2] *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005). In *Robinett*, we held that "[u]nlike proceeding on a per se theory, admission of a numerical BAC [blood alcohol concentration] test result for purposes of demonstrating impairment must be extrapolated back to the time of the alleged offense to be relevant." *Id*. at 113, 106 P.3d at 439. If the prosecution was simply seeking to establish a per se violation (the defendant's BAC exceeded the statutory limit), then it was not necessary to extrapolate the test results back to the time the defendant was driving. We stated:

> Where the prosecution elects to use the per se method, the question is what the alcohol level was at the time the sample was taken. "The lapse of time prior to the extraction of samples goes to the weight to be afforded the test results and not to their admissibility." For that reason, it is appropriate to admit results drawn an hour or more after the alleged offense without having to actually extrapolate the evidence back to the time of the alleged offense.

*Id*. (quoting *State v. Sutliff*, 97 Idaho at 523, 524, 547 P.2d 1128, 1129 (1976)).

In 1987, the legislature amended Idaho Code section 18-8004 so that there no longer needed to be a determination of alcohol concentration in the blood to prove a per se violation. Such a violation could be established simply by the test results. With that change, a per se violation could be proved if the person "has an alcohol concentration of 0.10 percent, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath." Ch. 122, § 2, 1987 Idaho Sess. Laws 247, 249.

Prior to the 1987 amendment, subsection (4) of the statute stated:

> For purposes of this chapter, an evidentiary test for alcohol concentration is a determination of the percent by weight of alcohol in blood and shall be based upon a formula of grams of alcohol per one hundred (100) cubic centimeters of blood, per two hundred ten (210) liters of breath or sixty-seven (67) milliliters of urine.

---

[2] Prior to the decision in *Robinett*, the statute had been amended to change "0.10 percent" to "0.08 percent." Ch. 158, § 1, 1997 Idaho Sess. Laws 457, 458.

The 1987 amendment deleted the words stating that an evidentiary test for alcohol concentration "is a determination of the percent by weight of alcohol in blood." With that deletion, the amended statute states:

> For purposes of this chapter, an evidentiary test for alcohol concentration shall be based upon a formula of grams of alcohol per one hundred (100) cubic centimeters of blood, per two hundred ten (210) liters of breath or sixty-seven (67) milliliters of urine. . . . .

I.C. § 18-8004(4).

The 1987 amendment also added to subsection (4) the following:

> Notwithstanding any other provision of law or rule of court, the results of any test for alcohol concentration and records relating to calibration, approval, certification or quality control performed by a laboratory operated or approved by the Idaho department of health and welfare or by any other method approved by health and welfare shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination.

Ch. 122, § 2, 1987 Idaho Sess. Laws 247, 250.

Thus, after the 1987 amendment, a per se violation of the statute no longer need be based upon showing "a determination of the percent by weight of alcohol concentration in blood." At the administrative hearing, Ms. Elias-Cruz argued that the test results did not accurately measure her "actual blood alcohol content." She stated, "In this case with regard to a blow of .02, her actual blood alcohol content could be as low as .015." With respect to the *McDaniel* opinion, she argued, "the Decision should be based on an actual blood alcohol content rather than a printout from a machine that is subject to error, especially when the blood alcohol content is at a lower level where the margin of error is greater."

After the 1987 amendment, a violation can be shown simply by the results of a test for alcohol concentration that complies with the statutory requirements. With that change, the margin of error in the testing equipment is irrelevant. The equipment need not precisely measure the alcohol concentration in the person's blood. The test need only be based upon the correct formula, and the equipment must be properly approved and certified.

In 1993, the legislature enacted Idaho Code section 18-8002A, creating the administrative license suspension under which Ms. Elias-Cruz's license was suspended in this case. Ch. 413, § 2, 1993 Idaho Sess. Laws 1515, 1519-1523. The definition of "evidentiary test for alcohol

concentration" in section 18-8002A is the same as the definition in Idaho Code section 18-8004(4). I.C. § 18-8002A(1)(e). Therefore, the margin of error of the testing equipment is also irrelevant in proceedings under section 18-8002A.

The district court held that the hearing officer's failure to consider the margin of error in the Lifeloc FC20 violated Ms. Elias-Cruz's right to due process. Due process requires an opportunity upon reasonable notice for a fair hearing before an impartial tribunal. *Miller v. St. Alphonsus Reg'l Med. Ctr., Inc.*, 139 Idaho 825, 835, 87 P.3d 934, 944 (2004). There is no contention that Ms. Elias-Cruz did not receive reasonable notice, there is no contention that she did not receive a fair hearing, and there is no contention that the hearing officer was not impartial.

The district court's analysis regarding due process was rather cursory. It stated, "A strict application of *McDaniel* would mean that even if a license holder could prove the breath alcohol machine malfunctioned she would still forfeit her driver's license." *McDaniel* did not so hold, and one of the statutory grounds for vacating the license suspension is that "the testing equipment was not functioning properly when the test was administered." I.C. § 18-8002A(7)(d). Ms. Elias-Cruz did not contend that the Lifeloc FC20 was not functioning properly when her test was administered.

The district court then stated, "It would be fundamentally unfair to hold someone strictly liable for a test result that the manufacturer itself would consider to be outside the acceptable margin of error." There is absolutely no evidence to support the court's statement that the manufacturer would consider the result of Ms. Elias-Cruz's test outside the acceptable margin of error. The court was apparently referring to the "Operator's Reference Manual" for the Lifeloc FC20 which states: "Lifeloc recommends you calibrate your FC once a year or if it fails 2 consecutive calibration checks." The machine used in this case had been last calibrated on August 18, 2009, fourteen months before Ms. Elias-Cruz's test. The manufacturer's recommendation of annual calibration is a far cry from asserting that the manufacturer would consider results from a machine that had not been calibrated annually as being outside the acceptable margin of error. A calibration check on the machine done on October 22, 2010, the day after Ms. Elias-Cruz's test, produced a result of 0.081 on a test sample that contained an alcohol concentration of 0.080. The Idaho State Police has the statutory authority to prescribe by rule "[w]hat calibration or checking of testing equipment must be performed to comply with the

department's requirements." I.C. § 18-8002A(3)(b). The State Police have not required annual calibration of the Lifeloc FC20, and the district court lacks the authority to impose such a requirement. As Ms. Elias-Cruz admits, "Idaho's administrative rules are silent as to the time frame for the actual calibration of the Lifeloc FC20" and "The SOPs [Standard Operating Procedures] are silent on the desired period of calibration for the Lifeloc."

Ms. Elias-Cruz argues on appeal that the hearing officer violated her due process rights by disregarding evidence of the testing machine's margin of error. There is no due process violation in excluding irrelevant evidence. There is no constitutional right to drive with alcohol in one's system. The legislature has the authority to define crimes, *State v. Prather*, 135 Idaho 770, 775, 25 P.3d 83, 88 (2001), and to place conditions upon the right to drive a motor vehicle, *State v. Bennett*, 142 Idaho 166, 171, 125 P.3d 522, 527 (2005) (suspending a driver's license for underage drinking), and *Adams v. City of Pocatello*, 91 Idaho 99, 104, 416 P.2d 46, 51 (1966) (suspending a driver's license for failure to deposit security for payment of judgment). The legislature has the authority to make driving a motor vehicle with any alcohol in one's system a crime and/or a ground for suspension of one's driver's license. When the statute declared it a crime for a person to drive a motor vehicle with "alcohol in his blood" greater than a specified amount, we did not require the State to establish the precise amount of alcohol in the driver's blood at the time of driving, even though we knew that the alcohol concentration in the driver's blood at the time of driving could be lower than at the time of testing. *Stutliff* and *Robinett*. In essence, we held that the driver took the risk that the concentration of alcohol in his blood at the time of testing would be greater than it was when he was actually driving an hour earlier. After the 1987 amendments, the standard is no longer the concentration of alcohol in the driver's blood. It is simply the alcohol concentration shown by an approved and properly administered test of the driver's breath, blood, or urine. Because the actual alcohol concentration in the driver's blood is no longer the standard, the testing machine's margin of error is irrelevant. "It is clear that the State has a legitimate interest in the prevention of underage drinking." *Bennett*, 142 Idaho at 171, 125 P.3d at 527. Ms. Elias-Cruz cannot complain that the alcohol concentration level of 0.02 percent for drivers under the age of twenty-one is too low when considered with the margin of error in the approved testing machines.

**IV.**

8

**Did the District Court Err in Ruling that the Testing Machine's**

**Margin of Error is Relevant under Idaho Code Section 18-8002A(7)(c)?**

The district court also ruled sua sponte that the margin of error was relevant under Idaho Code section 18-8002A(7)(c), which provides that the suspension will be vacated if the applicant proves that "[t]he test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code." In so holding, the court wrote that "an individual challenging her license suspension should be able to present evidence to prove that the test results did not make it apparent or clear that her alcohol concentration was actually above the legal limit." This argument indicates a misreading of the statute.

Under Idaho Code section 18-8002A(1)(e), by definition the test results show the alcohol concentration. The issue is not the alcohol concentration in the blood. It is the alcohol concentration as shown by the test results. There is nothing to which to compare the test results. All that is required is that the test results show that the alcohol concentration was above the legal limit. Thus, a suspension can be vacated if the petitioner proves that "[t]he *test results* did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code." I.C. § 18-8002A(7)(c) (emphasis added). Therefore, the district court erred in its interpretation of that statute.

## V.

**Did the Hearing Officer Err in Failing to Exclude the Test Results**

**Because There Were Not Two Verification Samples?**

Ms. Elias-Cruz contends, "The breath samples taken from Ms. Elias-Cruz should have been inadmissible against her since the Lifeloc was not properly checked for calibration with two verification samples, as required by the SOPs, after taking Ms. Elias-Cruz's breath sample." She did not object to the admission of the breath test results at the administrative hearing, nor did she raise this issue at the hearing. "Review on appeal is limited to those issues raised before the administrative tribunal," *Johnson v. Blaine County*, 146 Idaho 916, 920, 204 P.3d 1127, 1131 (2009), with the exception of "an issue the administrative tribunal lacked the authority to decide," *id.* at n.2. We will not consider on appeal issues that the administrative tribunal had the

9

authority to decide but were not raised before it. *Id*. at 927, 204 P.3d at 1138. Because this issue was not raised in the administrative proceeding, we will not consider it on appeal.

## VI.

### Conclusion.

We reverse the judgment of the district court. We award costs on appeal to the Department.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**