## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 39388

ALTRUA HEALTHSHARE, INC., )
)
    Petitioner-Appellant, )
)
v. )
)
BILL DEAL, in his capacity as Director of the )
Idaho Department of Insurance, and the )
IDAHO DEPARTMENT OF INSURANCE, )
)
    Respondents. )
)

Boise, December 2012 Term

2013 Opinion No. 28

Filed: February 25, 2013

Stephen W. Kenyon, Clerk

_____

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

District court opinion affirming the Hearing Officer's findings, <u>reversed</u> and <u>remanded</u>.

Christ T. Troupis, Eagle, argued for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. John C. Keenan, Deputy Attorney General argued.

_____

BURDICK, Chief Justice

Appellant Altrua HealthShare appeals the district court's decision affirming the Idaho Department of Insurance's (Department) determination that Altrua transacted insurance without a certificate of authority in violation of I.C. § 41-305. Altrua argues that both the Department and the Ada County district court erred in finding that Altrua was an insurer because Altrua never assumed the risk of paying its members' medical bills. The Department found, and the district court affirmed, that when members make their predetermined monthly payments into the escrow account Altrua operates, the risk of payment shifts from the individual members to the escrow account, and in turn to Altrua. Altrua also contends that the Department's determination that it is an insurer despite the disclaimers in its membership contract to the contrary is an unconstitutional interference with Altrua's right to contract.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Altrua HealthShare is a nonprofit entity that describes itself as "a nationwide faith based membership of individuals who share in each other's medical needs by bearing the burden of others." On January 15, 2010, the Department filed a Notice of Violation and Right to Hearing against Altrua contending that it was operating as a health insurance company in Idaho without a license. Following a hearing on September 1, 2010, the Hearing Officer issued his findings. The Hearing Officer concluded that Altrua's membership contract is an insurance contract because Altrua undertakes some risk of paying its members' claims or losses.

Altrua then filed a Motion for Reconsideration, which the Director of the Department denied. After the Hearing Officer's Amended Preliminary Order became a final order by operation of the law on January 4, 2011, Altrua filed a Notice of Appeal and Petition for Judicial Review. On October 13, 2011, the district court affirmed the Department's decision.

Both the Department's and the district court's decisions focused on Altrua's membership contract. This contract includes the Application for Membership, the Membership Eligibility Manual, and Altrua's Guidelines. The membership application includes a medical history questionnaire, an escrow instruction sheet, and a commitment agreement containing a statement of standards members must follow. Altrua uses the rules contained in the Membership Eligibility Manual to determine whether an applicant may become a member.

> The rules contained in this Membership Eligibility Manual are the standard against which an applicant's medical history is measured to determine if the applicant qualifies for the membership, and if so, what membership limitations should apply. The applicant's medical history includes examination reports, hospital records, physician opinions, test results, and symptoms significant enough to mention to a physician that pertain to both resolved and active conditions.

The Membership Eligibility Manual also includes itemized eligibility rules, specific listings for automatic denials based on particular medical conditions and activities such as tobacco or alcohol use, and height and weight guidelines.

On the membership application, potential members indicate their desired level of participation, which along with their age and marital status determines the amount Altrua requires them to pay each month. Altrua provides a detailed chart of this calculation titled "Monthly Contribution Request" in its Membership Eligibility Manual. Altrua describes the monthly contribution as voluntary, but failure to pay the amount designated in the Membership

Eligibility Manual renders one's membership inactive and no funds would be paid to the member.

Altrua holds members' monthly payments in an escrow account. The escrow instructions, which members sign as part of their application, require Altrua to first "pay the expenses of operating the membership," then "to pay eligible needs pursuant to the guidelines as modified from time to time by Altrua HealthShare and as interpreted and applied by Altrua HealthShare," and in the event of any surplus upon the termination of the membership, the "remaining funds shall be disbursed to qualified charities as determined by Altrua HealthShare." The membership guidelines give Altrua the sole authority to interpret the guidelines:

> CONTRIBUTORS' INSTRUCTION AND CONDITIONS by submitting monthly contributions, the contributor instructs Altrua HealthShare to share escrowed funds in accordance with the membership escrow instructions. Since Altrua HealthShare has nothing to gain or lose financially by determining if a need is eligible or not, the contributor designates Altrua HealthShare as the final authority for the interpretation of these guidelines. By participation in the membership, the member accepts these conditions as enforceable and binding.

Finally, Altrua's membership contract contains a number of disclaimers. The following are a few of the disclaimers in the membership contract:

> I understand that the membership is not insurance but is a voluntary medical needs sharing program, and that there are no representations, promises, or guarantees that my medical expense will be paid. I also understand that sharing for medical needs does not come from an insurance company, but from the membership according to the guidelines and membership Escrow Instructions.

> This publication or membership is not issued by an insurance company, nor is it offered through an insurance company. This publication or the membership does not guarantee or promise that your eligible medical needs will be shared by the membership. This publication or the membership should never be considered as a substitute for an insurance policy. If the publication or the membership is unable to share in all or part of your eligible medical needs, or whether or not this membership continues to operate, you will remain financially liable for any and all unpaid medical needs. This is not a legally binding agreement to reimburse you for medical needs you incur, but is an opportunity for you to care for another in a time of need, to present your medical needs to others as outlined in these membership guidelines.

## II. STANDARD OF REVIEW

"In an appeal from the decision of a district court acting in its appellate capacity under the [Idaho Administrative Procedure Act], this Court reviews the agency record independently of

the district court's decision." *A & B Irr. Dist. v. Idaho Dep't of Water Res.*, 153 Idaho 500, 505, 284 P.3d 225, 230 (2012). We review the decision of the district court to determine whether it correctly decided the issues presented to it. *Elias–Cruz v. Idaho Dep't of Transp.,* 153 Idaho 200, ___, 280 P.3d 703, 705 (2012).

This Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." I.C. § 67-5279(1). This Court "instead defers to the agency's findings of fact unless they are clearly erroneous. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *A & B Irr. Dist.*, 153 Idaho at 505–06, 284 P.3d at 230–31 (quoting *Urrutia v. Blaine Cnty.,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000)).

This Court shall:

> affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67–5279(3). Even if one of these conditions is met, this Court will still affirm the agency action "unless substantial rights of the appellant have been prejudiced." I.C. § 67–5279(4).

### III. ANALYSIS

The Department ordered Altrua to stop selling insurance in Idaho after finding that Altrua had not obtained a certificate of authority to transact insurance in violation of I.C. § 41-305(1). Under this section, transacting insurance includes any of the following:

> (1) Solicitation and inducement.
> (2) Preliminary negotiations.
> (3) Effectuation of a contract of insurance.
> (4) Transaction of matters subsequent to effectuation of a contract of insurance and arising out of it.
> (5) Mailing or otherwise delivering any written solicitation to any person in this state by an insurer or any person acting on behalf of the insurer for fee or compensation.

I.C. § 41-112.

Whether or not Altrua transacted insurance depends on whether the contract between Altrua and its members is an insurance contract. Idaho Code section 41-102 defines insurance as

4

"a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies." The Hearing Officer found that this definition "centers on the phrase 'undertakes to indemnify'" and concluded that "the fundamental attribute of insurance is risk sharing." Thus, the Hearing Officer focused on the first type of insurance contract under I.C. § 41-102's definition—those that undertake to indemnify another. Altrua does not disagree with this definition of insurance, just the Hearing Officer's determination that Altrua's membership contract falls within this definition. Specifically, Altrua claims that it cannot be an insurer because it simply administers members' funds through an escrow account and assumes no risk of paying members' claims. This Court agrees with Altrua that under this definition it is not an insurer. Consequently, we need not address Altrua's argument that the district court's decision that Altrua's membership contract is insurance violates the Contracts Clause.

The Hearing Officer correctly determined that for Altrua's membership contract to be a contract that seeks to indemnify another, it must shift the risk of paying members' claims from the individual members to Altrua. *See Selkirk Seed Co. v. State Ins. Fund*, 135 Idaho 434, 438–39, 18 P.3d 956, 960–61 (2000) (finding that contract was insurance under § 41-102 because State Insurance Fund assumes the risk of loss and "provides coverage for real and determinable risks"); *State v. Cont'l Cas. Co.*, 126 Idaho 178, 183, 879 P.2d 1111, 1116 (1994) ("The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer." (citing *Helvering v. Le Gierse,* 312 U.S. 531, 539 (1941))). The Department argues that substantial and competent evidence supports the finding that Altrua's membership contract is an insurance contract because Altrua undertakes some risk of paying its members' claims or losses. The Department mainly argues that the Hearing Officer correctly found that the risk of paying members' claims is shifted from the members to the separate escrow account into which members pay their monthly fees, and in turn to Altrua, because Altrua exercises complete control over this escrow account. The Hearing Officer based his findings on the role Altrua plays in administering the membership agreement and the members' reliance that their claims will be paid.

In their application for membership, members sign detailed escrow instructions prepared by Altrua that transfer control over the account to Altrua. Members pay their monthly contribution into this escrow account and give Altrua almost complete control over these funds.

5

When members submit claims to be paid out of the escrow account, Altrua determines the eligibility of the claim according to its guidelines, which it has complete discretion to interpret. Despite the high level of control Altrua exercises over the escrow account, simply operating the account does not mean that Altrua assumes the risk of paying members' claims. Altrua does not pay any of its members' claims with its own funds; rather, all of claims are paid out of the escrow account, which is made up entirely of members' contributions. While the Hearing Officer is correct that the terms of the membership contract place the discretion for payment in Altrua's hands, this is not the same thing as assuming the risk of paying members' claims.

The Hearing Officer also concluded that Altrua's membership contract creates reliance among the members that their claims will be paid. Altrua argues that the membership contract never guarantees that Altrua will pay members' medical claims and in fact, expressly disclaims any such guarantee. The Hearing Officer recognized these disclaimers, but found it particularly significant that Altrua's membership brochure specifically states, "Not one eligible medical need has gone unpaid since the membership started." Additionally, Altrua's membership agreement and commitment form require its members to adhere to a set of standards, submit an annual membership fee, and provide monthly contributions to Altrua. The membership contract requires members to make these monthly payments, with the failure to make them resulting in membership cancellation without a refund.

Despite the disclaimers in Altrua's contract, the structure of the membership plan and statements made in Altrua's brochure and guidelines are substantial and competent evidence supporting the Hearing Officer's finding that Altrua's membership contract creates a reliance interest in its members that their claims will be paid. However, this reliance is not sufficient on its own to make Altrua an indemnitor. Altrua must assume some of the risk of paying its members' claims for its membership contract to be one undertaking to indemnify its members. Controlling the escrow account containing the members' funds is not sufficient evidence that Altrua personally assumes any risk of paying members' claims. Altrua may have an obligation under the language of its contract, despite its disclaimers, to pay certain member claims so long as funds are available, but there is no evidence in the record that Altrua has guaranteed or assured payment of members' claims. Therefore, the Hearing Officer's conclusion that Altrua's membership contract is an insurance contract because Altrua assumes some risk of paying its members' claims is clearly erroneous.

**IV. CONCLUSION**

The district court's order affirming the Hearing Officer's findings is reversed and the case is remanded for further proceedings consistent with this opinion. Costs to Altrua.

Justices W. JONES and HORTON, **CONCUR.**

EISMANN, J., concurring

I concur in the majority opinion.  This is a prime example of an administrative agency exceeding its statutory powers in an attempt to protect citizens from themselves.  Although this clearly did not involve health insurance, the Department ignored the terms of the contract in order to find that it was a contract of insurance so that it could prevent Idahoans from entering into this type of contractual arrangement.  The people contracting with Altrua Healthshare are adults who presumably understand the risk they are taking by making monthly payments into the escrow fund, but are willing to do so as a means of paying for future health expenses that they may incur.  The Department is not tasked with the responsibility of making sure citizens do not make decisions it considers to be unwise.  Whether people should enter into this type of arrangement is for them to decide, not the Department.

J. JONES, J., concurring.

I concur in the Court's opinion and agree that the case needs to be remanded for further proceedings. The Department cannot particularly be faulted for concluding that the Altrua documents constitute an indemnity contract but should have pursued the alternate definition under I.C. § 41-102—a contract to "pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies." It appears that Altrua designed its program to look like insurance and act like insurance but to exclude it from being insurance by virtue of its numerous disclaimers.

Altrua contended before the Court on appeal that the rights of its members were contractual in nature and it sought to characterize the Department's proceeding as an impairment of its contract rights under the United States Constitution. However, in its membership "guidelines" it specifically states that "the guidelines are not a contract." Altrua claims that it is merely holding membership fees in escrow for the benefit of its members, while ignoring specific language in the membership guidelines that the fees "are voluntary contributions or gifts that are non-refundable," and that members retain absolutely no control over the escrowed fees. It is understandable that the Department has concern about the potential for Altrua members to

7

sustain injury. Altrua claims that, "Not one eligible medical need has gone unpaid since the membership started," but the membership guidelines contain no effective means for a member to obtain redress in the event a claim is not paid, except for an obligatory appeals process where Altrua retains absolute final say.

In the event that Altrua is successful on remand, the Department may take some comfort in the fact that an Altrua member will not be wholly without recourse. If Altrua's program does not constitute a contract of insurance within the meaning of I.C. § 41-102, it then comes within the purview of the Idaho Consumer Protection Act (ICPA), I.C. §§ 48-601, et. seq. Pursuant to I.C. § 48-605(3), persons subject to the trade practices and frauds provisions of the Idaho Insurance Code (I.C. § 41-1301, et seq.) are exempt from the ICPA. If it is ultimately determined that Altrua's program does not constitute engaging in the business of insurance, members can presumably resort to the ICPA for remedial action.