IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41221

| STATE OF IDAHO, | ) | 2014 Opinion No. 95 |
|---|---|---|
| Plaintiff-Respondent, | ) ) ) | Filed: November 6, 2014 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| JAY ALTON ROACH, | ) ) ) | |
| Defendant-Appellant. | ) ) ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge. Hon. Stephen J. Clark, Magistrate.

Decision of the district court affirming the magistrate's order excluding expert testimony, affirmed.

Swafford Law Office, P.C.; Larren K. Covert, Idaho Falls, for appellant. Larren K. Covert argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

GRATTON, Judge

Jay Alton Roach appeals from the district court's intermediate appellate decision affirming the magistrate court's order excluding expert testimony as irrelevant.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A trooper initiated a traffic stop because Roach's vehicle lacked a front license plate and an expiration sticker on the rear license plate. During the stop, the trooper detected the odor of an alcoholic beverage and noted Roach's eyes were glassy and bloodshot. After Roach failed the ensuing standardized field sobriety tests, he was arrested for driving while under the influence. The trooper waited the prescribed fifteen-minute waiting period and then obtained two breath samples using the Intoxilyzer 5000. The breath test results showed a breath alcohol concentration of .143 and .144.

During discovery, Roach disclosed Dr. Michael Hlastala as an expert witness. The State filed a motion to exclude Dr. Hlastala's testimony. The State anticipated that Dr. Hlastala would testify that breath tests are generally inaccurate to show an individual's level of intoxication. After the jury was selected, the magistrate considered whether to allow Dr. Hlastala's testimony, at which time Dr. Hlastala testified as an offer of proof. The magistrate later entered an order excluding Dr. Hlastala's testimony as irrelevant. The magistrate then granted Roach's motion for a permissive appeal. The district court, sitting in its intermediate appellate capacity, accepted the appeal and affirmed the magistrate court. Roach timely appeals.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).[1]

---

[1] The State contends that Roach failed to set forth the correct standard of review on appeal, by asserting that the magistrate erred, instead of arguing that the district court erred in affirming the magistrate court's decision. The State contends Roach has thus failed to meet his burden of proof on appeal to show the district court erred. The State relies on a warning given by the Idaho Supreme Court to civil litigants who failed to correctly articulate the standard of review. *See Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013) ("[W]e will proceed to consider the appeal. Litigants who fail to properly comprehend the standard of review for an appeal from the district court should not assume that this will always be the case."). We decline to set aside the criminal defendant's appeal because he or she misunderstood or mistakenly argued the standard of review when appealing from a decision rendered by the district court sitting in its appellate capacity.

The magistrate excluded Dr. Hlastala's testimony concluding it was not relevant. Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Idaho Rule of Evidence 401; *see also Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

The State charged Roach with driving under the influence. Idaho Code § 18-8004(1)(a) states:

> It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

Subsection four indicates that "an evidentiary test for alcohol concentration shall be based upon a formula of grams of alcohol per one hundred (100) cubic centimeters of blood, per two hundred ten (210) liters of breath or sixty-seven (67) milliliters of urine." I.C. § 18-8004(4).

Roach sought to introduce testimony from Dr. Hlastala to establish that the breath test was an unreliable determination of breath alcohol concentration. Dr. Hlastala has a Bachelor of Science in physics, and a Ph.D. in physiology. Dr. Hlastala has an extensive history of studying breath alcohol concentration, including numerous peer-reviewed articles, and his qualification as an expert was not challenged. Dr. Hlastala explained that he would testify regarding the human factors that influence the breath test result. According to Dr. Hlastala, the reliability of the result is uncertain because these factors are not measured as part of the test.

Dr. Hlastala identified a number of factors that could influence the breath test result, testifying to the following: An individual's body temperature can affect the result. A cooler body temperature will produce a lower result, whereas a higher body temperature will increase

3

the alcohol released into the breath. The temperature of the air and an individual's breathing pattern can also alter the result. For example, if an individual holds his or her breath before a test, as opposed to breathing rapidly, the alcohol concentration can be elevated. The amount of air inhaled can also vary the results because the more volume inspired, the more the airways are flushed out. An individual's blood cells, compared to the plasma ratio, may also affect the result. Dr. Hlastala did not propose to testify as to how any of these factors actually relate, if at all, to Roach's breath test.

Dr. Hlastala further testified that alcohol measured by the device does not come from the alveoli, the air sacs within the lungs, but instead comes from the airways leading to the mouth. Dr. Hlastala explained that the breath alcohol concentration changes as the breath moves from the lungs through the airways. The breath alcohol concentration continues to rise and is at its highest as the air comes out. In Dr. Hlastala's opinion, because the alcohol concentration stems from the continuing interaction with the airways, the Intoxilyzer 5000 is not accurate. Dr. Hlastala's opinion challenges a scientific assumption behind the design of all breath testing devices. He did not propose to testify as to Roach's breath test specifically.

As to the device itself, Dr. Hlastala testified that the actual measurement taken is accurate for what it is measuring. Dr. Hlastala acknowledged that the machine is operating correctly so long as it is properly calibrated. Explaining why the result is not accurate, Dr. Hlastala testified: "I mean all those things are correct. It's just that you're changing the sample which is, in effect, making it less related to what's in the human body." Dr. Hlastala noted that measuring the blood alcohol content would provide a more reasonable estimate of the level of alcohol concentration.

In finding the evidence inadmissible, the magistrate relied on *State v. Hardesty*, 136 Idaho 707, 39 P.3d 647 (Ct. App. 2002). In *Hardesty*, this Court reviewed the admissibility of evidence challenging the general accuracy of breath alcohol test results. We began by noting that Idaho's DUI statute previously required a conversion of the breath alcohol results to establish the level of blood alcohol concentration. The conversion required use of what is known as the "partition ratio." *Hardesty*, 136 Idaho at 709, 39 P.3d at 649. Hardesty sought to admit testimony that would discredit the reliability of using the partition ratio to determine the blood alcohol concentration from a breath sample. We noted that the ratio, 2100:1, varied depending on the individual and the circumstances present when the test is administered. *Id.* at 709 n.1, 39 P.3d at 649 n.1. However, the legislature amended I.C. § 18-8004, and no longer required a

4

conversion of breath alcohol concentration to blood alcohol concentration, but instead allowed measurement of the alcohol content of an individual's blood, breath, or urine. Because *Hardesty* sought to introduce evidence establishing the unreliability of the partition ratio, we held the evidence was irrelevant since a per se violation did not require a comparison of breath alcohol concentration to the level of blood alcohol concentration.

The Idaho Supreme Court similarly concluded that evidence of a breath testing machine's margin of error is irrelevant at a license suspension hearing. *Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 206, 280 P.3d 703, 709 (2012). The Court disagreed with the district court's analysis that a breath testing machine's margin of error, in relation to blood alcohol concentration, in measuring a breath sample was relevant, explaining:

> The issue is not the alcohol concentration in the blood. It is the alcohol concentration as shown by the test results. There is nothing to which to compare the test results. All that is required is that the test results show that the alcohol concentration was above the legal limit.

*Id.* The Court also noted:

> After the 1987 amendments, the standard is no longer the concentration of alcohol in the driver's blood. It is simply the alcohol concentration shown by an approved and properly administered test of the driver's breath, blood, or urine. Because the actual alcohol concentration in the driver's blood is no longer the standard, the testing machine's margin of error is irrelevant.

*Id.* at 205-06, 280 P.3d at 708-09.

Roach argues that he is merely attempting to challenge the scientific accuracy underlying the breath test.[2] He relies on language in *Hardesty* where we discussed dicta from *State v. Hopkins*, 113 Idaho 679, 747 P.2d 88 (Ct. App. 1987). In *Hardesty*, this Court noted that language in *Hopkins* indicated that "the unreliability of the scientific methodology underlying the design on the Intoximeter 3000, as well as whether the particular machine used to test the defendant's breath was functioning properly, were both challenges that could be maintained."

---

[2] Roach's contention that the magistrate erred by characterizing Dr. Hlastala's testimony as partition ratio testimony is belied by the record. As noted by the district court, the magistrate specifically acknowledged that Dr. Hlastala was not testifying regarding the partition ratio: "Based upon *Hardesty*, the Court can conclude that the challenge *while not specifically related to partition ratio* is a challenge to the underlying theory of the breath testing and to the criteria that the legislature has adopted in order to determine impairment." (Emphasis added.)

*Hardesty*, 136 Idaho at 710, 39 P.3d at 650. However, we were careful to note that based on the language in *Hopkins*:

> Hardesty would be entitled to challenge the scientific methodology underlying the design of the Intoxilyzer 5000 so far as it measured Hardesty's breath alcohol concentration. Therefore, as the district court concluded, Hardesty could challenge whether the Intoxilyzer 5000 accurately measured his breath alcohol concentration at the time Hardesty's breath test was administered. In addition, Hardesty could challenge whether the particular instrument used to measure his breath alcohol concentration was working properly at the time of his breath test and whether his breath test was administered correctly. However, *Hopkins* does not stand for the broad proposition that Hardesty was entitled to challenge the accuracy of the standard partition ratio.

*Hardesty*, 136 Idaho at 710, 39 P.3d at 650. Roach is not attempting to challenge the design of the Intoxilyzer 5000 to establish it does not accurately measure breath alcohol concentration in the sample taken; instead, Roach seeks to offer testimony explaining how a breath sample's alcohol content may vary based on the physiological variables. However, this information does not relate to whether an individual violated the per se DUI offense, which simply requires that a breath test yield a result above the per se limit.

Roach argues the human factors leading to variations in each person's breath test result is comparable to an officer failing to follow the adopted procedural requirement of waiting fifteen minutes before administering the test. We reviewed the fifteen-minute waiting procedure in *State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999):

> The Department of Law Enforcement has approved the Intoxilyzer 5000 as a method of determining breath alcohol content and has set out in an operator's training manual for that machine the approved methodology for administering the test. The pertinent portion of the manual instructs:
>
> > Observe the subject for 15 minutes. During this time, the subject may not smoke, consume alcohol, belch, vomit, use chewing tobacco, or have any other substance in the mouth. If belching or vomiting does occur or something is found in the mouth, wait an additional 15 minutes.
> > . . . .
>
> It is apparent from the manual that the observation period is required in order to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or by belching or regurgitation. It is a precaution that is necessary to insure the validity of the test results.

*Carson*, 133 Idaho at 452-53, 988 P.2d at 226-27. Roach argues that breathing mechanics, body temperature, and blood composition all impact the alcohol contamination. However, though

6

these variables may determine the level of alcohol in an individual's breath, they do not constitute contamination as Roach would characterize it. The Idaho State Police adopted the observation period as a procedural safeguard to ensure that what the machine measured was an individual's breath, not influenced by alcohol in the mouth or alcohol coming from the stomach. Unlike alcohol or other substances that have arrived in the mouth via belching, regurgitation, or vomiting, the variables described by Dr. Hlastala are a natural part of an individual's breathing.[3]

The physiological variables testified to by Dr. Hlastala describe ways in which the result of a breath sample may vary depending on the individual, but these variables do not relate to the *accuracy* of the breath sample measured by the machine. We, therefore, hold that evidence admitted to generally attack the validity of breath testing is irrelevant, and was properly ruled inadmissible in this case.[4]

Roach also argues that results from the Intoxilyzer 5000 are inaccurate because alcohol measured by the Intoxilyzer 5000 is not measuring air from the deep lung area, but instead measures alcohol coming from the airway. However, I.C. § 18-8004 does not require measurement of air from the deep lung area, or air in the alveoli, but simply requires measurement of the "breath." The New Oxford American Dictionary defines "breath" as "an inhalation or exhalation of air from the lungs." NEW OXFORD AMERICAN DICTIONARY 210 (2001). The exhalation of air coming from the lungs is plainly what the per se statute pertains to. Dr. Hlastala's explanation of how the air increases in alcohol concentration as it passes through the airways is in accord with what the legislature defined as a per se violation. Further, this testimony again does not relate to the accuracy of the measurement of the breath, but instead

---

[3]     We note that at least as to the variable relating to an individual's breathing pattern (particularly holding one's breath and then blowing), there may be instances where a specific breath sample could be skewed. However, Roach did not seek to introduce Dr. Hlastala's testimony to show his breath test was not properly administered, but instead he sought to generally attack what the legislature has defined as a commission of DUI.

[4]     *See People v. Vangelder*, 312 P.3d 1045 (Cal. 2013) (holding Dr. Hlastala's testimony regarding physiological variables effecting breath test machine was irrelevant under California's per se DUI statute); *but see State v. Cooperman*, 282 P.3d 446 (Ariz. Ct. App. 2012) (holding expert testimony regarding physiological factors impacting breath test results was relevant under Arizona DUI statute per se and general intoxication statute), *affirmed in part on other grounds by State v. Cooperman*, 306 P.3d 4 (Ariz. 2013).

challenges the legislature's reliance on breath testing to establish a per se limit of breath alcohol without regard to the alcohol concentration in the body.

Roach finally argues that the exclusion of Dr. Hlastala's testimony violated his Sixth and Fourteenth Amendment rights. He alleges the exclusion denies him the ability to present a meaningful opportunity to present a complete defense. However, a defendant does not have a constitutional right to submit irrelevant evidence. *Elias-Cruz*, 153 Idaho at 205, 280 P.3d at 708 ("There is no due process violation in excluding irrelevant evidence."). Accordingly, exclusion of the testimony did not violate Roach's constitutional rights.

## III.

## CONCLUSION

The magistrate properly determined that Dr. Hlastala's testimony was irrelevant. Therefore, the district court's decision affirming the magistrate's order is affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**