804 P.2d 936

STATE of Idaho, Plaintiff–Respondent,

v.

Bennie Jo PRESSNALL,
Defendant–Appellant.

No. 17665.

Court of Appeals of Idaho.

Jan. 3, 1991.

Stanton Rines, Kendrick, for defendant-appellant.

Jim Jones, Atty. Gen., James E. Leuenberger, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

This is a DUI case. We are asked to determine whether the trial court properly excluded non-forensic evidence of Pressnall's blood alcohol concentration, which was offered to impeach the results of the breath test admitted against him. We are also asked to examine whether the court erred in instructing the jury on the scientific acceptability of the intoximeter used to test Pressnall's breath alcohol content. As explained below, we vacate the judgment of conviction and remand the case for a new trial.

The facts are briefly as follows. In the early morning hours of February 27, 1988, Bennie Jo Pressnall was stopped by a Latah County police officer for suspicion of driving under the influence. Pressnall underwent a series of field sobriety tests and, based on the officer's observations, was arrested and transported to the Latah County Jail. At the jail, Pressnall submitted to two tests on an Intoximeter 3000. The results showed breath alcohol contents of .15 percent and .17 percent.

The state charged Pressnall with driving under the influence, in violation of I.C. § 18–8004, alleging that Pressnall had been driving "while under the influence of alcohol," or, in the alternative, that he had been driving "while having an alcohol content of .10 percent or more, as shown by analysis of his breath." The jury found Pressnall guilty of the crime charged.

I

We first address the evidentiary issue. At trial, Pressnall testified that, between the hours of five o'clock p.m. and eleven o'clock p.m. on February 26, he consumed approximately seven beers and two shots of tequila. Pressnall's breath alcohol content was measured the next morning at approximately four-thirty a.m., following his arrest. Based on this evidence, Pressnall's expert testified that a man of Pressnall's height and weight would have had a blood alcohol content within a range of 0.05 percent to 0.09 percent. Through an offer of proof, Pressnall indicated that his witness would further testify that Pressnall's blood alcohol level was related to the alcohol content of his breath. Pressnall sought to show through this testimony that his alcohol content could not have been .10 percent or more, implying that the results of the Intoximeter 3000 were inaccurate. However, the trial court ruled that any evidence concerning Pressnall's blood alcohol content, or its relationship to the level of alcohol present in Pressnall's breath, was irrelevant to the question of whether Pressnall's breath alcohol content exceeded the statutory limit, and excluded the testimony.

Pressnall maintains that the court erred in excluding evidence of his blood alcohol concentration and its correlation to the level of alcohol present in his breath. He asserts that this evidence was relevant and admissible for the purpose of impeaching the accuracy of the state's breath test results. We agree.

Rule 401, I.R.E., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible unless excludable on certain grounds. I.R.E. 402, 403; *State v. Hocker*, 115 Idaho 544, 547, 768 P.2d 807, 810 (Ct.App.1989).

A defendant charged with driving under the influence by proof of excessive alcohol content is entitled to offer any competent evidence tending to impeach the results of the evidentiary tests admitted against him. *See State v. Clark*, 286 Or. 33, 593 P.2d 123, 128 (1979); *State v. Gates*, 7 Haw.App. 440, 777 P.2d 717, 720–21 (1989). Thus, a defendant may introduce evidence of his blood alcohol content, or other direct or circumstantial evidence, to show a disparity between such evidence and the results produced by the chemical testing, so as to give rise to an inference that the prosecution's test results were defective. *See State v. Clark*, 593 P.2d at 126–27; *State v. Keller*, 36 Wash.App. 110, 672 P.2d 412 (1983).

Here, Pressnall sought to introduce evidence of his blood alcohol concentration, and its relationship to the level of alcohol in his breath, showing an alcohol concentration of less than .10 percent. We find that such evidence was "relevant" within the meaning of I.R.E. 401, and admissible for the purpose of discrediting the results of the state's breath test. We hold that in a prosecution for driving while under the influence, where the state has alleged that the defendant was driving while having an alcohol content of .10 percent or more as shown by analysis of his blood, breath or urine, evidence of a contradictory alcohol content, otherwise proper, is admissible for the purpose of impeaching the results of the evidentiary tests submitted by the state.[1] The probative weight to be accorded to such testimony is left to the jury as trier of the facts, as is the weight to be accorded other evidence in the case. We conclude that the district court erred in withholding the testimony from the jury.

We must next decide if the error affected Pressnall's substantial rights or was harmless. I.C.R. 52. This question turns on whether it appears from the record that the error contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same verdict had the error not occurred. *State v. Alger*, 115 Idaho 42, 47–48, 764 P.2d 119, 124–25 (Ct.App.1988). Where error concerns evidence omitted at trial, the test is whether there is a reasonable possibility that the lack of excluded evidence might have contributed to the conviction. *State v. Scroggie*, 110 Idaho 103, 110, 714 P.2d 72, 79 (Ct.App.1986).

Although the record shows that Pressnall presented expert testimony indicating that the Intoximeter 3000 was not infallible, the excluded evidence of Pressnall's blood alcohol level and its relationship to his breath alcohol content specifically contradicted the results of the tests admitted against him. Assuming the jury believed Pressnall's testimony regarding his alcohol consumption, the excluded testimony would have demonstrated that Pressnall's alcohol concentration was lower than that shown by the intoximeter, and consequently would have permitted the jury to doubt the accuracy of the state's evidence. Consequently, the exclusion of this testimony may have contributed to a jury finding that Pressnall was driving while having an alcohol content of .10 percent or more.

We note also that the state presented evidence on its alternative theory of driving "under the influence." Under that theory, the offense may be established by direct or circumstantial evidence of defendant's impaired ability to drive due to the influence of alcohol. *State v. Knoll*, 110 Idaho 678, 682, 718 P.2d 589, 593 (Ct. App.1986). It has been suggested that even if the erroneous exclusion of evidence was prejudicial to Pressnall on the "alcohol content" theory, the jury could have returned the same verdict upon finding that the Pressnall's driving was impaired due to alcohol, under the state's alternate "under the influence" theory. Thus, if the jury rendered its verdict based upon the testimony of the officer concerning his observations of Pressnall's impaired driving ability,

---

1. We are mindful to distinguish between what may be deemed competent *substantive* evidence for the purpose of establishing the defendant's alcohol content in a DUI case, which is gov- erned by I.C. § 18–8004(1) and (4), and what is deemed competent for the purpose of *impeachment* of the substantive evidence offered by the state. *See State v. Clark*, 593 P.2d at 128–29.

any error tainting the alternate alcohol content theory would be harmless and the judgment of conviction in this case should be affirmed. This, however, is purely speculative because the verdict form does not separate the two alternative theories.[2] As such, we have no way of knowing whether the jury concluded that Pressnall was guilty under the state's "alcohol content" theory, its "impaired driving" theory, or both. Where error affecting the fact-finding process is determined to have occurred, the issue is not whether the verdict can be sustained upon any reasonable view of the evidence, as it is where the verdict is attacked for lack of sufficient evidence. *See, e.g., United States v. Becker,* 720 F.2d 1033 (9th Cir.1983); *State v. Fenley,* 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). Rather, as stated above, the issue is whether the error affecting one theory of guilt (alcohol content) is rendered harmless by a postulated finding that might have been made on an alternative theory (impaired driving). *See Pierson v. Brooks,* 115 Idaho 529, 535, 768 P.2d 792, 798 (Ct.App.1989).

The evidence presented to the jury consisted primarily of the conflicting testimony of Pressnall and the arresting officer. The officer testified that he observed Pressnall's eyes as red and glassy, his speech slurred, and his breath smelling of intoxicants. The officer also asserted that Pressnall failed to successfully complete any of the sobriety tests administered. Pressnall, on the other hand, denied that he was affected by alcohol. He testified that he was putting a tape in his tape deck which caused his vehicle to swerve as the officer was observing him. He further maintained that he had adequately performed all but one of the field sobriety tests; we note also that Pressnall's account of the manner in which the field test was administered differed markedly from that testified to by the officer. Pressnall further produced expert testimony indicating

that, given the uncontroverted evidence of Pressnall's metabolism and the amount of alcohol consumed the evening prior to his arrest, the alcohol remaining in Pressnall's system at the time of his arrest generally would not render him under the influence of alcohol. Upon this evidence, it would have been entirely permissible for the jury to conclude that the state had not proven its "under the influence" theory of the case. Having reviewed the record before us, we believe the evidence did not point to only one reasonable finding concerning proof of impaired driving. Nor will we postulate a finding upon such conflicting evidence for the purpose of invoking the harmless error doctrine. *Pierson v. Brooks,* at 535, 768 P.2d at 798.

We conclude that the error in excluding impeaching evidence, as it related to the reliability of the breath test results, reasonably could have affected the ultimate outcome of this case. The judgment of conviction must therefore be vacated and the case remanded for a new trial.

## II

■ Because this case is being remanded, we will address the additional issue raised in this appeal. Pressnall contends that the district court erred in giving the following jury instruction:

The scientific acceptability of the breath analysis process utilized in the Intoximeter for alcohol concentration is well established, and it is not necessary for the State to produce a witness to establish a foundation for the acceptability of that breath analysis process.

However, the reliability and performance of any given machine is subject to challenge. If there is evidence that any particular machine has malfunctioned or was designed or operated so as to produce unreliable results, you may consider such evidence and give it such credibility as you determine when evaluating the

---

**2.** This case suggests the advisability of giving to the jury some form of a special verdict in cases where a defendant is charged with the commission of a single crime, but under alternative theories. Such a procedure would provide the trial court and the appellate court with a *more*

*meaningful* opportunity to consider what prejudice may have resulted from evidentiary and procedural rulings which occurred during the trial, with respect to the various theories relied upon by the state.

accuracy of a breath analysis test result from a given machine.

Pressnall asserts that the instruction unconstitutionally shifted to the defendant the burden of proving the accuracy of the intoximeter. The determination of this issue involves a question of law and accordingly we exercise free review on appeal.

 We note initially that a breath test showing an alcohol concentration of .10 percent or more is not conclusive proof of guilt of the offense of driving while under the influence; the state has the burden of proving beyond a reasonable doubt that the .10 percent reading is correct. *See State v. Keller,* 36 Wash.App. 110, 672 P.2d 412 (1983). An instruction which has the effect of shifting that burden to the defendant is constitutionally impermissible. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1978).

The court's instruction apparently was derived, in part, from I.C. § 18–8004(4), and, in part, from *State v. Hartwig,* 112 Idaho 370, 732 P.2d 339 (Ct.App.1987). Idaho Code § 18–8004(4) provides, "the results of any test for alcohol concentration ... shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination." Thus, by legislative enactment, the intoximeter [3] has been deemed reliable for the limited foundational purpose of having its test results admitted into evidence. *See State v. Gates,* 7 Haw.App. 440, 777 P.2d 717 (1989). We note, however, that the admissibility of the results of certain evidentiary testing does not equate to the sufficiency of such evidence to sustain a conviction. *See State v. Lowther,* 7 Haw.App. 20, 740 P.2d 1017 (1987).

In *Hartwig,* we addressed the *admissibility* of the results of an Intoximeter 3000 on the basis of scientific acceptability of the breath analysis process. 112 Idaho at 375, 732 P.2d at 34. In that case, we took judicial notice of the fact that the Intoximeter 3000 was a breath testing method generally accepted within the appropriate scientific community. *Id.* We observed, however, that once the test's results had been admitted into evidence, the reliability and performance of any given machine was subject to challenge. *Id; See also State v. Wilson,* 116 Idaho 771, 774, 780 P.2d 93, 96 (1989). We further note here that the reliability of the *process utilized* also may be attacked. *State v. Hopkins,* 113 Idaho 679, 747 P.2d 88 (Ct.App.1987).

We believe that the statements contained in the instruction, while not necessarily erroneous statements of law, were pertinent only to the issue of the general admissibility of the test results—a matter presented to the trial court as a question of law. *See* I.R.E. 104(a). For this reason, we hold that the instruction was improperly given to the jury, and on retrial, should be omitted. Because we find the instruction improper on this basis, we need not address the constitutional argument, except to note that Pressnall's position may have merit. *See, e.g., Wilhelm v. State,* 568 So.2d 1 (Fla.1990) *and State v. Leverett,* 799 P.2d 119 (Mont.1990).

The judgment of conviction is vacated. The case is remanded to the district court for a new trial consistent with this opinion.

SWANSTROM, J., and WINMILL, J., pro tem., concur.

---

**3.** The Intoximeter 3000 used to test Pressnall's alcohol concentration, was an "approved" device within the meaning of I.C. § 18–8004. *See*

*State v. Wilson,* 116 Idaho 771, 773–74, 780 P.2d 93, 95–96 (1989).