979 P.2d 1201

STATE of Idaho, Plaintiff–Respondent,

v.

Mark Steven HARRIS, Defendant–Appellant.

No. 25009.

Supreme Court of Idaho,
Boise, February 1999 Term.

June 16, 1999.

Ronaldo A. Coulter, State Appellate Public Defender; Rolfe M. Kehne, Deputy Appellate Public Defender, Boise, for appellant. Rolfe M. Kehne argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

## SCHROEDER, J.

Mark Steven Harris (Harris) was convicted for the crimes of rape and kidnapping in the first degree. The Court of Appeals vacated his judgments of conviction and remanded for a new trial after concluding that the district court had abused its discretion by excluding a defense witness from testifying as the sanction imposed for failing to timely disclose the witness. This matter is before the Court on the State's petition for review.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

The background and prior proceedings were summarized in the Court of Appeals' decision as follows:

On May 13, 1995, Harris spent the day drinking at several bars in the Boise area. He and a friend later went to a bar on Broadway Avenue where he met N.K. Thereafter, Harris and N.K. went outside together. The trial testimony at this point differed vastly. According to N.K., Harris took out a knife and forced her into his vehicle, a convertible BMW with its top up. Harris drove her to a printing business on Broadway Avenue where he worked and forced her inside the building. Harris and N.K. then went upstairs. At the top of the stairs, N.K. lost her footing and the two went crashing down the stairs. N.K. landed on a desk with Harris falling on top of her. Harris started beating N.K. with a metal bar. N.K. took the metal bar from Harris, went to a front window and tried unsuccessfully to break the window. Harris grabbed N.K. and raped her. After the rape, N.K. convinced Harris to let her drive his vehicle back to the bar. When they got back to the bar, N.K. ran inside and the authorities were notified. The police arrived and Harris was arrested.

Harris testified that he and N.K. went outside the bar to do some cocaine. Once outside, Harris showed N.K. his BMW, which had the top down, and they decided to go for a drive. They also decided to stop at the printing business where Harris worked. They went inside the building, and Harris gave N.K. a tour. They eventually went upstairs and began to get intimate. Harris took off his clothes, including his prosthesis leg. Realizing that the upstairs room was too small, they decided to go downstairs. At the top of the stairs, with Harris behind N.K., Harris lost his footing. They crashed down the stairs and landed on a desk. Harris testified that N.K. thought he had intentionally pushed her down the stairs and, on seeing him with the metal bar, asked if he was going to beat her. Harris did not beat her with the metal bar. The two tried unsuccessfully to have sex and drove back to the bar.

Based on Harris's conduct as portrayed by N.K., Harris was indicted on rape and kidnapping charges. Harris went to trial before a jury. At trial, defense counsel called John Williams to testify. Williams was apparently going to testify that he was driving on Broadway Avenue the night of the incident and saw that Harris's BMW was parked in front of the printing business with its top down. Williams' testimony would have contradicted the victim's testimony that Harris's BMW's top was up when she was forced into Harris's vehicle. Williams' testimony would have further contradicted N.K.'s implication that she could not escape out of Harris's vehicle.

The state objected to Williams testifying on the basis that Williams had not been disclosed as a witness. The state requested that Williams be excluded from testifying as a sanction for the failure to disclose. Defense counsel admitted that he had neglected to list Williams as a witness, but stated that his failure to disclose Williams was not deliberate. The district court specifically found that defense counsel's failure to disclose Williams was inadvertent. The district court then stated: "The other problem is that it's simply not disclosed. I don't think you can bring him in if it hasn't been disclosed." The district court excluded Williams from testifying as a sanction for the discovery violation. The district court, however, indicated that it would reconsider its ruling if the state had time to interview Williams. Defense counsel ensured that Williams would be available during the day so that the state would have the opportunity to interview him at any time. The state, however, did not interview Williams and he was not allowed to testify.

Harris was found guilty of rape and kidnapping. The district court sentenced Harris to a unified sentence of twenty years, with ten years fixed, for the rape and a concurrent, fixed ten-year term of confinement for the kidnapping. Harris appealed, claiming the district court abused its discretion in excluding Williams' testimony as a sanction for the discovery violation.

*State v. Harris,* Docket No. 23006, WL # 394900 (Ct.App. July 16, 1998).

The Court of Appeals concluded that the district court abused its discretion in excluding Williams' testimony and vacated the convictions and remanded the case for a new

trial. *Harris*, WL # 394900, at *3–4. The State filed a petition for review which this Court granted.

## II.

## STANDARD OF REVIEW

■ "When considering a case on review from the Court of Appeals, this Court gives serious consideration to the Court of Appeals; however, this Court reviews the trial decision directly. This Court is not merely reviewing the correctness of the Court of Appeals' decision; rather, this Court is hearing the matter as if the case were on direct appeal from the district judge's decision." *Northland Ins. Co. v. Boise's Best Autos & Repairs*, 131 Idaho 432, 433, 958 P.2d 589, 590 (1998) (citations omitted).

■ This Court reviews the district court's refusal to allow Williams to testify due to a discovery violation under an abuse of discretion standard. *State v. Lamphere*, 130 Idaho 630, 945 P.2d 1 (1997); *State v. Stradley*, 127 Idaho 203, 207–08, 899 P.2d 416, 420–21 (1995). The Court reviews an exercise of discretion by conducting a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

## III.

## THE DISTRICT COURT ERRED IN ITS CONSIDERATION OF THE EXCLUSION OF THE DEFENSE WITNESS.

■ The right to offer testimony is grounded in the Sixth Amendment Compulsory Process Clause, and the Sixth Amendment can be violated by imposition of a discovery sanction that entirely excludes the testimony of a material defense witness. *Taylor v. Illinois*, 484 U.S. 400, 409–10, 108 S.Ct. 646, 653–54, 98 L.Ed.2d 798, 810–11 (1988). The United States Supreme Court

has recognized, however, that where a defense counsel's failure to comply with a request to identify his witnesses in advance of trial was willful and intentional (which was the case in *Taylor* ), exclusion of the witness' testimony is entirely appropriate, regardless of whether other sanctions would also be merited, and that such exclusion does not violate the Sixth Amendment. *Id.* at 415–16, 108 S.Ct. at 656–57, 98 L.Ed.2d at 814–15. Unlike *Taylor*, the non-disclosure in this case was inadvertent.

In *State v. Stradley*, 127 Idaho 203, 899 P.2d 416 (1995), this Court considered whether the trial court had abused its discretion when it imposed a monetary sanction of $1,781 against the public defender personally for failure to comply with a discovery request. Despite a written discovery request from the prosecutor, defense counsel did not produce test results prior to trial and argued he was not obligated to do so. *Id.* at 206, 899 P.2d at 419. In response to the defense counsel's failure to comply, the prosecution moved to exclude the defense witness who had administered the test. The trial court refused to exclude the test results, ruling that although Rule 16(j) of the Idaho Criminal Rules allowed him to exclude the defense witness who had administered the test, the defendant's right to a fair trial outweighed any consideration of exclusion. *Id.* This Court held that the trial court did not abuse its discretion, and that it acted within the outer boundaries of its discretion and consistently with the applicable legal standards by narrowly tailoring the sanction against the individual responsible in an attempt to remedy the damage caused by the misconduct. *Id.* at 212, 899 P.2d at 425. The Court recognized that "in a serious felony case such as this, the trial court is called upon to fashion a sanction which will impress counsel with the importance of responding to discovery requests, and yet will not prejudice the defense of the case." *Id.* at 211, 899 P.2d at 424. Unlike *Stradley*, the trial court in the present case did not consider whether Harris' right to a fair trial outweighed exclusion.

Subsequent to trial in this case, the Court decided *Lamphere*, 130 Idaho at 633, 945 P.2d at 4, in which it considered the trial court's decision to exclude a witness who was disclosed late by defense counsel:

In the present case, the State did not show any prejudice, but simply stated an objection to the witness on the basis of late disclosure. In deciding this issue, the court merely stated: "[T]he State has not had ample notice of this witness, and I think the prejudice, even if it were relevant, is a burden that the State need not bear." The district court did not require the State to make any showing that it would have been prejudiced if W.P. were allowed to testify. We hold that the district court exceeded the proper bounds of its discretion by failing to analyze whether the State would suffer prejudice due to the late disclosure.

*Id.* at 633–34, 945 P.2d at 4–5.

In the present case the trial court did not weigh any prejudice that might be suffered by the State against Harris' right to a fair trial. The error was compounded by the fact that the trial court placed the determination of whether the State could interview and respond to the testimony within the discretion of the prosecution. The trial court determined that it would reconsider the exclusion if the prosecution had the time to interview the witness. There was no requirement that the State make a good faith effort to interview the witness to determine the nature and scope of the proposed testimony. Not surprisingly, neither the prosecutor nor any of the State's investigators interviewed the witness, and the prosecution gave no reason why it could not interview the witness other than stating a generalized conclusion of being too busy. The decision of whether the witness testified was ultimately placed with the prosecutor. The trial court abused its discretion in excluding the witness by not evaluating the prejudice to the State against Harris' right to a fair trial and by allowing the prosecutor to make the determination of whether the State would make a good faith effort to interview and respond to the witness.

## IV.

## EXCLUSION OF THE WITNESS WAS NOT HARMLESS ERROR.

The State argues that if the trial court erred in excluding the witness, the error was harmless. The Court disagrees.

### A. Appealability

Harris argues that the State should be precluded from arguing harmless error because it did not make this argument before the Court of Appeals. Where a second appeal is taken, appellants may not raise issues that are different from those presented in the intermediate court. *See, e.g., Craven v. Doe,* 128 Idaho 490, 493, 915 P.2d 720, 723 (1996); *Wood v. Wood,* 124 Idaho 12, 16–17, 855 P.2d 473, 477–78 (Ct.App.1993). The general rule, however, does not apply in this case because Harris himself raised the issue of harmless error in his brief before the Court of Appeals. The issue was presented to the Court of Appeals and is properly before this Court for review. In any event, the Court could not grant Harris' request for reversal without first determining whether the error was harmless beyond a reasonable doubt. *State v. Gomez,* 126 Idaho 700, 705, 889 P.2d 729, 734 (Ct.App.1994). Even if the issue had not been raised before the Court of Appeals, this Court must address the issue as a necessary means to deciding whether to grant Harris' request on appeal.

### B. Standard of Review

"Where error concerns evidence omitted at trial, the test is whether there is a reasonable possibility that the lack of excluded evidence might have contributed to the conviction." *State v. Pressnall,* 119 Idaho 207, 209, 804 P.2d 936, 938 (Ct.App.1991).

### C. The Exclusion May Have Contributed to the Conviction.

The State argues that exclusion of Williams' testimony was harmless error because Williams' testimony was cumulative. A review of the record, however, indicates that Williams' testimony was not cumulative. This is a case of the alleged victim's word against the defendant's word. N.K. testified that the top to Harris' BMW convertible was up and that Harris forced her into his car at knife point. Further, N.K. testified that she could not escape because Harris locked the vehicle by a remote security device. Harris

testified that the top was down when they left the Broadway bar and that N.K. went with him willingly. Though not essential to the result, it is noteworthy that the trial court excluded evidence that Harris attempted to offer in surrebuttal that the vehicle had no remote security device at the time of the events in this case. If admitted, the evidence would have shown that the remote control device was added after Harris disposed of the car, further undercutting N.K.'s testimony.

Mike Wilson, the son of Harris' girlfriend, testified that he drove by the printing business the night the charges arose and saw Harris' car parked out front with its top down. He also testified that he saw Harris' car later that night being towed by a tow truck and the top was up. During the State's cross-examination, Wilson admitted that he told his mother he did not want to get involved in the case, but he denied the State's suggestion that he had told his mother he did not remember seeing the car that night.

The State called Eric Pohlmann in rebuttal, who testified that he had overheard approximately three different heated conversations between Wilson and his mother, and that he heard Wilson tell his mother he did not remember whether he ever saw the car at the printing business during the night in question. He further testified that he heard Wilson's mother forcing Wilson to remember that he did see the car. Wilson's mother had already been impeached in portions of her testimony.

The excluded witness, John Williams, was a close friend of Wilson. Williams would have testified that he was in his car following Wilson during the night in question, and that he saw Harris' BMW parked at the printing business with the top down. Wilson had given the same testimony, but his credibility had been called into question by Pohlmann's testimony. If the jury did not believe Wilson, there was no evidence to corroborate Harris' testimony that the top was down. Williams' testimony would have been corroborating evidence and would have cast doubt on the accuracy of N.K.'s testimony that she was kidnapped and forced into Harris' BMW where she was entrapped with no means of escape. *Compare Pressnall*, 119 Idaho at 209, 804 P.2d at 938 (trial court committed reversible error where erroneously excluded evidence would have contradicted evidence admitted, thereby casting doubt on the accuracy of State's evidence). The evidence that was excluded went directly to the credibility of N.K., both as to her recollection of the events and the feasibility of the alleged kidnapping as she described it. If the jurors questioned N.K.'s testimony that she was kidnapped, they might also have questioned her testimony that she was raped.

The error in excluding Williams' testimony reasonably could have affected the outcome of the case.

## V.

## THE COURT WILL NOT ADDRESS OTHER ASSIGNMENTS OF ERROR.

Harris raises other serious assignments of error, including: (1) a claim that the State was allowed to improperly call an undisclosed witness in rebuttal; (2) a claim that the State was improperly permitted to present evidence that Harris' girlfriend borrowed money to bail Harris out of jail and then declared bankruptcy; and (3) a claim that the State was permitted to elicit evidence that Harris was driving drunk several weeks earlier. In view of the Court's determination that exclusion of Williams' testimony constitutes reversible error, the Court will not reach these other issues.

## VI.

## CONCLUSION

The judgments of conviction are vacated and the case is remanded for a new trial.

Chief Justice TROUT, Justices SILAK, WALTERS and Justice Pro Tem McDERMOTT concur.