**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41913**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 19** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: April 7, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **WADE ALLEN TOMLINSON,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge. Hon. John T. Hawley, Magistrate.

Order of the district court, on intermediate appeal from the magistrate, affirming judgment of conviction for driving under the influence, <u>affirmed</u>.

David J. Smethers, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Chief Judge

Wade Allen Tomlinson appeals from the district court's order, entered in its intermediate appellate capacity, affirming Tomlinson's judgment of conviction for driving under the influence (DUI). Tomlinson argues that the district court erred in affirming the magistrate's decision denying his motion for a continuance and its evidentiary rulings regarding the results of his breath alcohol concentration test results. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Tomlinson was pulled over for committing two traffic infractions. Tomlinson admitted to having drank earlier in the evening and was arrested after failing field sobriety tests. He

provided two breath samples, which returned breath alcohol concentrations of .083 and .082. Tomlinson was charged with driving under the influence (DUI) and pled not guilty.

The magistrate issued a trial status memorandum requesting that the state "prepare a formal complaint for trial" by at least one week prior to trial. Seven days before the original trial date, the state provided Tomlinson with a copy of the complaint that it originally intended to file on the day of trial. The language of the complaint tracked the language of I.C. § 18-8004(1)(a).[1] Tomlinson moved for a continuance on the day of trial, which the magistrate granted. Approximately one month later, Tomlinson requested and was granted a second continuance. A week later, and more than two months before the new trial date, the state provided Tomlinson with a copy of the alternative proposed complaint, which narrowed the state's chosen theory of liability down to alleging that Tomlinson had an alcohol concentration of .08 or above. Approximately three weeks before the new trial date, the state filed a motion in limine seeking to exclude any evidence or testimony regarding uncertainty or error in the measurement of Tomlinson's breath alcohol concentration, including whether Tomlinson's blood alcohol concentration had ascended or descended from the time he was stopped to the time he provided the breath sample. Tomlinson did not respond to the motion and the state did not request that the motion be set for a hearing. One day before trial, Tomlinson requested a third continuance, claiming that he was not prepared to proceed. The magistrate again granted the continuance over the state's objection, setting a new trial for approximately one month later. At that time, the magistrate informed the parties that it would hear argument on the state's motion in limine on the morning of trial.[2]

---

[1] Idaho Code Section 18-8004(1)(a) provides:

It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

[2] Tomlinson contends that the record contains only the state's recollection of a conversation between the magistrate and the parties in chambers regarding when the motion

On the day of trial, the state filed the complaint it had provided Tomlinson approximately three months earlier, alleging that Tomlinson had violated I.C. § 18-8004(1)(a) by being "in actual physical control of a motor vehicle . . . with an alcohol concentration of .08 or more, as shown by analysis of blood, urine, or breath." Tomlinson requested a fourth continuance of the trial, which the magistrate denied. The magistrate then heard argument on the state's motion in limine, at which time the state moved to also exclude evidence of observable signs of intoxication. Tomlinson objected, stating that he had not received notice of when the state's motion would be heard. After argument, the magistrate declined to preclude Tomlinson from challenging the accuracy and reliability of the breathalyzer and deferred ruling on what evidence Tomlinson could use in such an attack until the issues arose in the case.

The jury found Tomlinson guilty of DUI, I.C. § 18-8004(1)(a). The magistrate withheld judgment and placed Tomlinson on probation. Tomlinson appealed to the district court, asserting that the magistrate had abused its discretion by denying his motion for continuance made on the morning of trial because he did not have sufficient notice of the state's complaint filed that same day or that the motion in limine would be heard at that time. He also argued that the magistrate had erred in precluding and allowing certain evidence regarding Tomlinson's alcohol concentration. The district court affirmed and Tomlinson again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions following

would be heard. However, the magistrate confirmed the state's account at trial, acknowledging "that was what I stated," and rejected Tomlinson's alternative recollection of what was discussed. Moreover, the magistrate noted that it had planned to hear the motion on the day of trial and generally did not set motions in limine for separate hearings because of limited calendar space. Thus, Tomlinson's contention is not supported by the record.

therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.* Thus, the appellate courts do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *Id.*

## III.

## ANALYSIS

Tomlinson argues that the district court erred by affirming his judgment of conviction and the magistrate's allegedly erroneous rulings on various issues. Specifically, Tomlinson alleges that the magistrate erred by denying his motion for a continuance; excluding evidence regarding his outward manifestations of intoxication, performance on the field sobriety tests, and blood alcohol level at the time he was driving; and admitting a printout of his breath test results over his hearsay objection.

### A.      Request for Continuance

The decision of whether to grant or deny a motion for a continuance is within the discretion of the trial court. *State v. Thorngren*, 149 Idaho 729, 736, 240 P.3d 575, 582 (2010); *State v. Payne*, 146 Idaho 548, 567, 199 P.3d 123, 142 (2008). In determining whether the district court abused its discretion, this Court considers whether the district court: (1) perceived the issue as one of discretion; (2) acted within the bounds of that discretion and consistent with established legal standards; and (3) reached its decision through the exercise of reason. *Payne*, 146 Idaho at 567, 199 P.3d at 142.

#### 1.      Amendment of complaint

Tomlinson argues that the magistrate abused its discretion by denying Tomlinson's fourth request for a continuance because the state did not file its formal complaint until the morning of trial. Thus, according to Tomlinson, he was not given adequate notice of the exact theory of liability under which the state planned to proceed and was prejudiced as a result.

A trial court may permit a misdemeanor complaint to be amended at any time before the prosecution rests, even if a different or greater offense is charged, so long as the substantial rights of the defendant are not prejudiced. Idaho Misdemeanor Criminal Rule 3(d); *accord* Idaho Criminal Rule 7(e); *State v. Severson*, 147 Idaho 694, 709, 215 P.3d 414, 429 (2009); *State v.*

4

*Banks*, 113 Idaho 54, 56, 740 P.2d 1039, 1041 (Ct. App. 1987). If an amendment of a citation or complaint is made, the magistrate may, in its discretion, grant a continuance of the trial for good cause. M.C.R. 3(d). A denial of a motion for continuance constitutes reversible error only if the appellant shows that the denial prejudiced his or her substantial rights. *Thorngren*, 149 Idaho at 736-37, 240 P.3d at 582-83; *State v. Laws*, 94 Idaho 200, 202, 485 P.2d 144, 146 (1971); *State v. Herrera*, 152 Idaho 24, 30, 266 P.3d 499, 505 (Ct. App. 2011); *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct. App. 1995).

In *Banks*, we addressed whether, under I.C.R. 7(e), the end-of-trial amendment of an information to add the victim's age in a forcible rape case prejudiced Banks's substantial right to present a defense. We determined that Banks was not prejudiced by the amendment because he knew of the victim's young age and failed to allege a viable alternative defense that he would have offered if the request for a continuance was granted. *Banks*, 113 Idaho at 58-60, 740 P.2d at 1043-45. Thus, factors relevant to determining whether a defendant was prejudiced by an amendment include whether the amendment took the defendant by surprise, impaired the defendant's ability to adequately prepare a defense, necessitated extensive further preparation by the defendant, or subjected him or her to double jeopardy. *Severson*, 147 Idaho at 709, 215 P.3d at 429; *Banks*, 113 Idaho at 58-60, 740 P.2d at 1043-45.

Here, the state's complaint filed the day of trial constituted an amendment to the uniform citation. Tomlinson, however, has failed to establish that he was prejudiced by that amendment. Tomlinson was not surprised by the amendment because he was provided with the state's alternative proposed complaint, which was ultimately filed on the day of trial, approximately three months before the trial. Moreover, if the complaint the state intended to file left any doubt regarding which theory the state planned to proceed under, the state's motion in limine seeking to exclude evidence it deemed irrelevant to a per se theory of liability, which was filed a month and a half before trial, should have removed that doubt. Thus, the record leaves no doubt that Tomlinson knew the state was going to proceed on a per se theory of liability long before the trial commenced. The amendment also required no additional preparation on Tomlinson's part--much less extensive additional preparation--as he was on notice from the moment he received the uniform citation that he was being charged with DUI, which could be proved by showing actual impairment, a per se violation, or both. *See* I.C. § 18-8004(1)(a).

5

Tomlinson has also not shown that he was impaired in his ability to adequately prepare his defense. Tomlinson contends that he prepared to defend the case based on the violation listed on the citation, which did not specify that the state would proceed on a per se theory of liability. However, had Tomlinson actually prepared for trial based on the citation, he would have been prepared to defend against either theory of liability available to the state under I.C. § 18-8004(1)(a). Tomlinson further argues that, had he received more notice of the state's preferred theory of liability, he would have retained an expert to testify regarding ascending-descending blood alcohol concentration, the margin of error of the breathalyzer, physiological effects on the breath test results, and his performance of the field sobriety tests. Again, nothing prevented Tomlinson from being prepared to address at trial the state's chosen theory of liability, which it made him aware of long before trial. At the least, Tomlinson knew that the per se theory was available to the state; however, the record reflects that he had repeated advance notice of the state's preferred theory and should have prepared accordingly. Tomlinson cannot claim prejudice because he chose to await the filing of a formal complaint before preparing a defense against a theory that he knew was a possibility from the outset and had actual notice of well before trial.[3] Indeed, Tomlinson's decision not to retain an expert despite knowing of the state's chosen theory of liability belies his assertion that he was impaired in his ability to prepare an adequate defense by the magistrate's denial of his motion for a continuance. Accordingly, the magistrate did not abuse its discretion by denying Tomlinson's motion for a fourth continuance on the day of trial, and Tomlinson has failed to show that the district court erred in affirming the magistrate's decision.

---

[3] A uniform citation may act as a complaint in a prosecution for a misdemeanor. M.C.R. 3(b); *see also* I.C.R. 3.1 ("Any misdemeanor may be charged and prosecuted by an Idaho Uniform Citation (Summons and Complaint) as provided in the [M.C.R.].") Thus, the state was not required to file an additional or amended complaint prior to trial, despite the magistrate's memo indicating that the state would prepare such a complaint at least one week prior to trial. The trial may be conducted entirely upon the uniform citation unless a sworn complaint is demanded by any party within a specified time. M.C.R. 3(d); I.C.R. 3.1. Tomlinson has not alleged that he demanded such a sworn complaint. Even if he had, the state complied with the rule because it provided Tomlinson with a copy of its alternative proposed complaint approximately three months prior to trial.

## 2. Motion in limine

Tomlinson also asserts that the magistrate's denial of his motion for a continuance violated his due process rights because he did not receive adequate notice of when the state's previously filed motion in limine would be heard.[4]  Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence.  *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001). However, we freely review the application of constitutional principles to those facts found.  *Id.* Procedural due process requires notice and a meaningful opportunity to be heard prior to government action that may deprive an individual of life, liberty, or property interest.  *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *State v. Rhoades*, 121 Idaho 63, 72, 822 P.2d 960, 969 (1991).

Tomlinson contends that, because I.C.R. 45(c) requires that "notice of hearing [on a motion] shall be served not later than seven (7) days before the time specified for the hearing" and because he did not receive such notice from the state, his due process rights were violated. However, Tomlinson ignores the remainder of I.C.R. 45(c), which states that such notice on a motion is required "unless a different period of time is fixed . . . by order of the court." Tomlinson was specifically informed by the magistrate that the motion would be resolved on the day of trial.  Thus, notice of a hearing from the state was not required pursuant to I.C.R. 45(c).

Furthermore, consistent with I.C.R. 45(c), a trial court is not required to rule on a motion in limine prior to trial.  *See State v. Hester*, 114 Idaho 688, 700, 760 P.2d 27, 39 (1988); *State v. Dopp*, 129 Idaho 597, 603, 930 P.2d 1039, 1045 (Ct. App. 1996).  Instead, the trial court, in the exercise of its discretion, may decide that it is inappropriate to rule in advance on the

---

[4]      In his reply brief, Tomlinson seems to argue that the magistrate was required to provide a ruling allowing the state to proceed on the per se theory of liability under I.C. § 18-8004(1)(a). Not so.  There is no requirement that the state receive approval from the trial court before proceeding on a particular theory of liability under I.C. § 18-8004(1)(a) or otherwise.  *See, e.g.*, *State v. Edmondson*, 125 Idaho 132, 133-34, 867 P.2d 1006, 1007-08 (Ct. App. 1994) (noting that the state had limited itself by advising the court and defendant that it would be proceeding solely on a per se basis).  Indeed, whether to proceed on one or both available theories is based on the state's election, not that of the trial court.  *See State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005); *Edmondson*, 125 Idaho at 134, 867 P.2d at 1008.  Thus, any claim that Tomlinson was deprived of due process or otherwise prejudiced by a lack of such a decision before trial is without merit and we need not address Tomlinson's arguments on this basis.

admissibility of evidence based on a motion in limine, but may defer its ruling until the case unfolds and there is a better record upon which to make a decision. *Hester*, 114 Idaho at 700, 760 P.2d at 39. That is what the magistrate did here, and Tomlinson's due process rights were not violated by that decision. Tomlinson received notice of the state's motion in limine when it was filed. He received notice of when that motion would be heard when the magistrate informed him approximately a month prior to the trial date that it would take up the motion at trial. Thus, Tomlinson has failed to establish that the magistrate's denial of his motion for a continuance violated his due process rights or that the district court erred in affirming the magistrate's decision on this basis.

**B.      Evidentiary Issues**

Tomlinson also contends that the district court erred in affirming various evidentiary rulings by the magistrate. Specifically, Tomlinson argues that the magistrate erred in excluding evidence regarding the margin of error of the breathalyzer, whether Tomlinson's blood alcohol concentration was ascending between the time he was stopped and when the breath test was given, Tomlinson's performance on the field sobriety tests, and general evidence of his actual impairment. Tomlinson also argues that the magistrate erred in admitting a printout of Tomlinson's breath test results over his hearsay objection.

**l.      Exclusion of evidence**

We exercise free review over questions of law, including issues pertaining to compliance with the foundational requirements for admission of alcohol concentration evidence. *State v. Carson*, 133 Idaho 451, 452, 988 P.2d 225, 226 (Ct. App. 1999).

Idaho Code Section 18-8004(1)(a) provides, in pertinent part:

> It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state . . . .

Subsection (4) further provides, in pertinent part:

> For purposes of this chapter, an evidentiary test for alcohol concentration shall be based upon a formula of grams of alcohol per one hundred (100) cubic centimeters of blood, per two hundred ten (210) liters of breath or sixty-seven (67) milliliters of urine.

This section establishes one crime with two ways of proving a violation. *State v. Garrett*, 119 Idaho 878, 881-82, 811 P.2d 488, 491-92 (1991); *State v. Knoll*, 110 Idaho 678, 682, 718 P.2d 589, 593 (Ct. App. 1986). The first way to prove a violation is to show under the totality of the evidence that the defendant was driving under the influence; the second is to establish that the defendant drove with an alcohol concentration of .08 or above, as shown by analysis of blood, breath, or urine. *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005); *State v. Edmondson*, 125 Idaho 132, 134, 867 P.2d 1006, 1008 (Ct. App. 1994). The State may elect to proceed against the defendant under either or both theories of proof. *Robinett*, 141 Idaho at 112, 106 P.3d at 438; *Edmondson*, 125 Idaho at 134, 867 P.2d at 1008. Evidence that is relevant under one theory of proof is not necessarily relevant under the other. *Robinett*, 141 Idaho at 112, 106 P.3d at 438; *State v. Andrus*, 118 Idaho 711, 713, 800 P.2d 107, 109 (Ct. App. 1990).

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). A defendant has no right to present irrelevant evidence, and even if evidence is relevant, it may be excluded in certain cases. *State v. Meister*, 148 Idaho 236, 241, 220 P.3d 1055, 1060 (2009); *State v. Self*, 139 Idaho 718, 722, 85 P.3d 1117, 1121 (Ct. App. 2003). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Here, the state elected to proceed solely under a per se theory of liability, requiring that it prove, beyond a reasonable doubt, that Tomlinson had an alcohol concentration of .08 or above at the time the test was taken. *See Robinett*, 141 Idaho at 112, 106 P.3d at 438; *State v. Sutliff*, 97 Idaho 523, 524, 547 P.2d 1128, 1129 (1976); *State v. Juarez*, 155 Idaho 449, 452, 313 P.3d 777, 780 (Ct. App. 2013). Indeed, such proof is conclusive, not presumptive, of guilt. *See Edmondson*, 125 Idaho at 135, 867 P.2d at 1009; *Andrus*, 118 Idaho at 713, 800 P.2d at 109.

In *Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 280 P.3d 703 (2012), the Idaho Supreme Court interpreted the evidence relevant to a per se violation under I.C. § 18-8004. In that case, the Court stated:

> After the 1987 amendment, a violation can be shown simply by the results of a test for alcohol concentration that complies with the statutory requirements. With that change, the margin of error in the testing equipment is irrelevant. The equipment need not precisely measure the alcohol concentration in the person's blood. The test need only be based upon the correct formula, and the equipment must be properly approved and certified.

*Elias-Cruz*, 153 Idaho at 204, 280 P.3d at 707. The Court further noted that, after the 1987 amendment, "the standard is no longer the concentration of alcohol in the driver's blood." *Id.* at 205, 280 P.3d at 708. Instead, the relevant standard is "simply the alcohol concentration shown by an approved and properly administered test of the driver's breath, blood, or urine." *Id.* The Court summarized:

> The issue is not the alcohol concentration in the blood. It is the alcohol concentration as shown by the test results. There is nothing to which to compare the test results. All that is required is that the test results show that the alcohol concentration was above the legal limit.

*Id.* at 206, 280 P.3d at 709. Thus, the Court held that, for a per se violation of Section 18-8004, evidence relating to the general correlation of the alcohol concentration in the breath to the alcohol concentration in the blood, such as the purported margin of error of the breath testing machine, was irrelevant.

Tomlinson argues that *Elias-Cruz* is not relevant in his case because it involved an administrative license suspension under I.C. § 18-8002A. However, as noted by the Court in *Elias-Cruz*, for one's license to be suspended under that section, there must be a violation of I.C. § 18-8004. Moreover, the Court meticulously recounted the legislative history of I.C. § 18-8004 before concluding that an approved breathalyzer's margin of error was irrelevant to determining whether a defendant committed a per se violation of that statute as a result of the alcohol concentration in his or her blood, breath, or urine. *Elias-Cruz*, 153 Idaho at 203-04, 280 P.3d at 706-07. As noted by the Court, the legislature enacted former I.C. § 49-1102 in 1970, which created a presumption of intoxication if the driver's blood alcohol content exceeded the specified limit. *Elias-Cruz*, 153 Idaho at 203, 280 P.3d at 706; *see also* 1970 Idaho Sess. Laws, ch. 9, § 2 at 15-16. In 1984, that statute was repealed and recodified at I.C. § 18-8004. *See* 1983

10

Idaho Sess. Laws (Ex. Sess.), ch. 3, § 13 at 17-18; 1984 Idaho Sess. Laws, ch. 22, § 2 at 25-29; *see also Knoll*, 110 Idaho at 680, 718 P.2d at 591. The new statute changed the significance of test results for blood alcohol concentration such that the test results no longer created merely a presumption of intoxication, but could be used to establish a per se violation of the statute. *Elias-Cruz*, 153 Idaho at 203, 280 P.3d at 706. The statute was amended in 1987 to remove the requirement of showing the amount, by weight, of alcohol in the blood. *See* 1987 Idaho Sess. Laws, ch. 122, § 2 at 247-49. Thus, there no longer needed to be a determination of alcohol concentration in the blood to prove a per se violation; instead, a per se violation could be established simply by test results from an approved test of blood, breath, or urine. *Id.*; *Elias-Cruz*, 153 Idaho at 204, 280 P.3d at 707.

After recounting the legislative history of I.C. § 18-8004, the Court noted that the definition of "evidentiary test for alcohol concentration" in Section 18-8002A is the same as the definition in Section 18-8004(4) and the margin of error of the testing equipment in proceedings was likewise irrelevant to proceedings under I.C. § 18-8002A. *Elias-Cruz*, 153 Idaho at 204, 280 P.3d at 707. Thus, contrary to Tomlinson's assertion, *Elias-Cruz* is not limited to only administrative proceedings; instead, it interpreted the criminal statute under which Tomlinson was prosecuted and applied that interpretation to the administrative proceedings. The context of the Court's interpretation of a criminal statute does not change the applicability of that interpretation. Indeed, what is relevant to proving a violation of I.C. § 18-8004 is the same regardless of the context. As a result, that interpretation is just as controlling as to the admissibility of the margin of error of a breathalyzer in a criminal case as it is in an administrative setting.

Although Tomlinson contends the magistrate ruled that he was precluded from presenting evidence of the margin of error of the breathalyzer based on *Elias-Cruz*, during cross-examination Tomlinson was allowed to ask the arresting officer about the alleged 5 percent margin of error on the breathalyzer used in his case. The state's objection that terminated that line of questioning came well after several questions had been asked and responses given regarding the purported margin of error. The officer's inability to remember the actual margin of error or authoritatively speak regarding it does not constitute error on the part of the magistrate. Thus, the district court did not err in affirming the magistrate's evidentiary decision on this issue.

11

It is important to note that the Court's opinion in *Elias-Cruz* does not prevent a defendant from challenging the accuracy and reliability of the specific machine used in his or her case or the test results obtained therefrom. Indeed, it is well established that a defendant may challenge a breathalyzer insofar as it measured the defendant's breath alcohol concentration, including whether the breathalyzer accurately measured his breath alcohol concentration, whether the particular device was working properly at the time of the breath test, and whether the breath test was properly administered. *State v. Hardesty*, 136 Idaho 707, 710, 39 P.3d 647, 650 (Ct. App. 2002); *see also State v. Wilson*, 116 Idaho 771, 774, 780 P.2d 93, 96 (1989); *State v. Roach*, 157 Idaho 551, 555, 337 P.3d 1280, 1284 (Ct. App. 2014); *State v. Ward*, 135 Idaho 400, 404, 17 P.3d 901, 905 (Ct. App. 2001); *State v. Van Sickle*, 120 Idaho 99, 104 n.2, 813 P.2d 910, 915 n.2 (Ct. App. 1991); *State v. Hopkins*, 113 Idaho 679, 680, 747 P.2d 88, 89 (Ct. App. 1987). Thus, a defendant may impeach the accuracy of his or her *specific* breath test result with evidence that his or her blood alcohol content at the time of the breath test was different than the breath alcohol content provided by the breathalyzer. *Hardesty*, 136 Idaho at 710-11, 39 P.3d at 650-51. This could be done by introduction of a contradictory test result taken at or very near the time of the breath test. *Id.*; *see also State v. Pressnall*, 119 Idaho 207, 208-09, 804 P.2d 936, 938-39 (Ct. App. 1991) (concluding that expert testimony regarding the relationship between blood alcohol concentration and breath alcohol concentration test results, and the expert's opinion of what a defendant's blood alcohol concentration would have been at the time a breath test was performed, were admissible because it tended to imply that the breath test result was inaccurate).

The state is not required to extrapolate the result of an evidentiary test--whether it be for blood, breath, or urine--back to a time when the defendant was driving. *Elias-Cruz*, 153 Idaho at 203, 280 P.3d at 706; *Robinett*, 141 Idaho at 112, 106 P.3d at 438; *Sutliff*, 97 Idaho at 525, 547 P.2d at 1130. Although the lapse of time prior to the extraction of samples is not relevant to their admissibility, it remains relevant to the weight to be afforded the test results. *Elias-Cruz*, 153 Idaho at 203, 280 P.3d at 706; *Robinett*, 141 Idaho at 113, 106 P.3d at 439; *Sutliff*, 97 Idaho at 524, 547 P.2d at 1129. Tomlinson was not prevented from presenting evidence of the lapse of time prior to the extraction of the breath tests; on the contrary, he elicited this evidence during cross-examination of the arresting officer. Tomlinson did not have an expert prepared to testify regarding extrapolation of his breath test results back to what his blood alcohol concentration

12

would have been at the time he was driving. Moreover, the arresting officer was not qualified as an expert to testify regarding such specialized and particularized knowledge. Thus, the magistrate did not err in excluding evidence that Tomlinson did not have available and could not have introduced in any event.

However, had Tomlinson retained an expert to discuss extrapolation of Tomlinson's breath test results back to the time he was driving, the magistrate still would not have erred in excluding that evidence. Although evidence of the lapse of time between the stop and the evidentiary test is relevant to the weight afforded the test results, it does not necessarily follow that evidence regarding back extrapolation is relevant to defend against a per se violation of the statute. Indeed, where the prosecution elects to proceed under a per se theory of liability, the question is what the alcohol level was *at the time the sample was taken*. *Robinett*, 141 Idaho at 112, 106 P.3d at 438; *Juarez*, 155 Idaho at 452, 313 P.3d at 780. As we noted in *Hardesty* and *Presnall*, a breath test result may be impeached by a *contemporaneous* contradicting result or expert testimony as to what the defendant's blood alcohol content would have been *at the time of the breath test*. No Idaho appellate court has ever held, under the post-1987 DUI statute, that evidence regarding a defendant's alcohol concentration at a time other than when an evidentiary test was performed is relevant under a per se theory of liability. Thus, the alcohol concentration in a defendant's blood, breath, or urine at the time he or she was driving is irrelevant.[5] The district court did not err in affirming the magistrate's decision to exclude such evidence as irrelevant.

---

[5] As recently stated by the Idaho Supreme Court:

> When the [previous] statute declared it a crime for a person to drive a motor vehicle with "alcohol in his blood" greater than a specified amount, we did not require the State to establish the precise amount of alcohol in the driver's blood at the time of driving, even though we knew that the alcohol concentration in the driver's blood at the time of driving could be lower than at the time of testing. *Sutliff* and *Robinett*. In essence, we held that the driver took the risk that the concentration of alcohol in his blood *at the time of testing* would be greater than it was when he was actually driving an hour earlier.

*Elias-Cruz*, 153 Idaho at 205, 280 P.3d at 708 (emphasis added).

13

Tomlinson further alleges that he was precluded from introducing evidence of his outward manifestations of impairment--or lack thereof--and performance of the field sobriety tests. We have previously stated that, when the state elects to proceed under a per se theory, the extent of a defendant's impairment is "neither an element nor a fact of consequence in the state's case-in-chief." *Edmondson*, 125 Idaho at 135, 867 P.2d at 1009. However, such evidence would not necessarily be inadmissible for the purpose of impeachment, as long as the defendant could correlate the physical manifestations of impairment with a specific blood alcohol level contemporaneous with the test results. *Id.*; *Pressnall*, 119 Idaho at 209, 804 P.2d at 938. In *Edmondson*, we explained as follows:

> [E]vidence of impairment is not probative for the purpose of challenging an alcohol concentration test "unless an adequate foundation [is] laid to show a correlation between the alleged blood-alcohol level and the likely manifestation of specific symptoms." The necessary foundation would ordinarily require expert testimony regarding the reasonably expected symptoms of intoxication of someone with the defendant's physical characteristics and a breath alcohol content as shown by the [breathalyzer].

*Edmondson*, 125 Idaho at 135, 867 P.2d at 1009 (citation omitted). We went on to distinguish the situation in *Edmondson* from the situation in *Pressnall*, in which a magistrate erred by excluding expert testimony regarding the defendant's expected blood alcohol level at the time the breathalyzer test was performed. Unlike the defendant in *Pressnall*, Edmondson had failed to lay an adequate foundation for admissibility of his outward manifestations of impairment or his performance of the field sobriety tests by correlating that evidence with the alcohol concentration level shown by the breathalyzer test. *Edmondson*, 125 Idaho at 135, 867 P.2d at 1009. Such a foundation would "ordinarily require expert testimony regarding the reasonably expected symptoms of intoxication of someone with the defendant's physical characteristics and a breath alcohol content as shown by the [breathalyzer]," as was offered in *Pressnall*, which Edmondson had not provided. *Id.* Thus, evidence of his outward symptoms of impairment was irrelevant and inadmissible. *Id.*

Similarly here, Tomlinson failed to provide expert testimony relating his performance of the field sobriety tests and his outward manifestations of intoxication to an expected blood alcohol concentration at the time of the breathalyzer. Tomlinson was also unable to qualify the arresting officer as an expert because the officer lacked scientific, technical, or specialized

14

knowledge about the correlation of specific alcohol concentrations and the physical manifestations thereof or absorption rates of alcohol in the body. *See* I.R.E. 701 and 702. Absent such foundational evidence, any testimony regarding the field sobriety tests or other outward signs of intoxication were not relevant to defend against the state's prosecution for a per se violation of I.C. § 18-8004(1)(a). Thus, the district court did not err in affirming the magistrate's decision to exclude such evidence as irrelevant as well.

### 2.    Admission of evidence

Tomlinson further challenges the magistrate's admission of a printout of Tomlinson's breath test results. Tomlinson objected to admission of the document on the basis of I.R.E. 803(8)(A), which governs the hearsay exception regarding public records, and he reiterates that objection on appeal.[6] The magistrate overruled the objection on the basis of I.C. § 18-8004(4).

> Idaho Code Section 18-8004(4) provides, in pertinent part:
>
> Notwithstanding any other provision of law or rule of court, the results of any test for alcohol concentration and records relating to calibration, approval, certification or quality control performed by a laboratory operated or approved by the Idaho state police or by any other method approved by the Idaho state police shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination.

Thus, the results of a test for alcohol concentration, including a breath test done with an approved breathalyzer, are admissible without the need to produce a witness to establish the reliability of the test. However, it does not necessarily follow that this rule alone renders a printout of the test results admissible. Nonetheless, we have previously held that a printout from such a test is not excludable as hearsay because it is not hearsay:

---

[6]     At trial and on appeal, Tomlinson stated his objection was on the basis of I.R.E. 803(6)(A); however, there is no such rule. There is Rule 803(6), but that rule addresses the hearsay exception for records of regularly conducted activity and has limited application to this situation. From the context, it appears that Tomlinson was intending to object under Rule 803(8)(A), which excludes from the public records exception investigative reports of police and other law enforcement, except when offered by the accused in a criminal case. Regardless of which rule is applied, the outcome remains the same: the breath alcohol concentration test results were not excludable as hearsay.

> [I]t is plain that the printout from the [breathalyzer] is not a "statement" for hearsay purposes. The printout, although a writing offered to prove the truth of the matter asserted therein, is not extrajudicial testimony prohibited by the hearsay rule; the printout is a test result produced by a machine. The [breathalyzer] machine is not a "declarant" capable of being hailed into the courtroom, placed under oath, made to testify and then cross-examined.

*Van Sickle*, 120 Idaho at 102, 813 P.2d at 913. We based this conclusion on the plain language of the Idaho Rules of Evidence. Under those rules, "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c). A "declarant" is defined as "a person who makes a statement." I.R.E. 801(b). And a "statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." I.R.E. 801(a). Thus, as we noted in *Van Sickle*, a breathalyzer machine cannot provide hearsay because it is not a declarant and does not provide a statement as defined in the rules. Accordingly, the district court did not err in affirming the magistrate's decision to admit the printout of the breath test results over Tomlinson's objection.

## IV.

## CONCLUSION

Tomlinson has failed to establish that the district court erred in affirming the magistrate's decision to deny his motion for a continuance; exclude evidence of his outward manifestations of impairment, his performance of the field sobriety tests, and extrapolation of his breath test results back to the time he was driving; and admit the printout of his breath test results. Accordingly, the district court's order, entered in its intermediate appellate capacity, affirming Tomlinson's judgment of conviction for DUI is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.